IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EVELYN M. PAPP-ROCHE                                                              PLAINTIFF

V.                              Case No. 2:15-CV-2052

CAROLYN W. COLVIN, Commissioner,
Social Security Administration                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Evelyn M. Papp-Roche, seeks judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the provisions of Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). Plaintiff has exhausted her administrative remedies, and therefore, pursuant to 42 U.S.C. § 405(g), judicial review is now appropriate. After having reviewed the record for the purpose of determining whether the Commissioner's decision is supported by substantial evidence, the Court **AFFIRMS** the decision of the Commissioner.

**I. Procedural Background**

Plaintiff filed her applications for DIB and SSI on July 9, 2012 and January 18, 2013, respectively, claiming disability beginning April 13, 2007, due to anxiety, severe depression, memory loss, and stage 2 in remission ovarian cancer. (Tr. 144-50) The State Disability Determination Services denied Plaintiff's applications initially and upon reconsideration. (Tr. 96-98, 103-04) At Plaintiff's request, an Administrative Law Judge (the "ALJ"), Hon. Harold D. Davis, conducted a hearing on April 2, 2013, at which Plaintiff and Montie Lumpkin, a vocational expert,

testified. (Tr. 54-82) Plaintiff was represented at the hearing by her attorney, David Harp. (Tr.54)

By written decision dated December 20, 2013, the ALJ found that Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine status post laminectomy, status post ovarian cancer and total abdominal hysterectomy, and major depression. (Tr. 12) After reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or medically equal the level of severity of any impairment listed in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 13)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she can use her hands for frequent, but not repetitive, reaching, handling and fingering. (Tr. 14) The ALJ further found that Plaintiff would be limited to jobs that involve simple tasks and simple job instructions, as well as, only incidental contact with the public. (Tr. 14) The ALJ concluded that Plaintiff is unable to perform her past relevant work as a cardiac stenographer and EKG technician as their requirements exceed Plaintiff's RFC to perform light, unskilled work. (Tr. 19) After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20). The ALJ concluded Plaintiff was not under a disability (as defined in the Social Security Act) from the alleged onset date of April 13, 2007, through the date of the decision. (Tr. 21)

Plaintiff requested a review of the ALJ's unfavorable decision by the Appeals Council. (Tr. 6) This request was denied on January 29, 2015. (Tr. 1-4) The ALJ's decision therefore became the final decision of the Commissioner, and Plaintiff's administrative remedies were exhausted. (Tr. 1) Plaintiff subsequently filed her Complaint herein seeking judicial review of the Commissioner's decision. (Doc. 1) Both parties have filed briefs, and this case is before the Court for decision.

(Docs. 9, 10)

## II. Standard of Review and Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

3

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if she reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Analysis

The ALJ in this case found Plaintiff was not disabled and had the RFC and capability to successfully adjust to other unskilled occupations performed at the light work level that exist in significant numbers in the national economy with certain restrictions. (Tr. 21) Plaintiff alleges that the ALJ erred by: (1) making an improper step two determination, (2) failing to properly assess Plaintiff's RFC, and (3) making an improper step five determination.

#### A. No Error in Step Two Analysis

Plaintiff contends the ALJ committed prejudicial error by failing to find that her anxiety, cluster B personality traits, osteoarthritis and fibromyalgia were severe impairments. (Doc. 9, pp. 10-11) Plaintiff asserts that these impairments cause more than minimal effects on her ability to work and, therefore, are severe. (Doc. 9, p. 11) Additionally, Plaintiff contends that by failing to find these additional severe impairments, the ALJ did not include the appropriate work limitations in the later

4

steps of his evaluation. (Doc. 9, p. 11) The Court finds the ALJ's determination that these impairments were not severe is supported by substantial evidence.

At Step Two, a claimant has the burden of providing evidence of functional limitations in support of their contention of disability. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); 20 C.F.R. § 404.1521(a)). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)).

According to Plaintiff, her anxiety has been under variable control despite treatment with medication, and that this was evident at the hearing. (Doc. 9, p. 10) Plaintiff contends these problems would make it difficult to handle the stresses of a normal work environment as evidenced by her treatment records from Vista Health ("Vista") and Dr. Fayz Hudefi's assessment. (Doc. 9, p. 11)

Plaintiff's initial visit to Vista to address her depression and anxiety was on March 9, 2009. Her chief complaint was "unresolved issues of past marriage." (Tr. 381) On April 9, 2009, Plaintiff reported that her anxiety was minimally controlled with Xanax. (Tr. 390) On May 11, 2009, Plaintiff returned reporting increased anxiety, however, Dr. Hudefi noted she was currently involved in a lawsuit over property she had inherited. (Tr. 391) On June 9, 2009, Plaintiff reported she had anxiety due to the fact that the IRS was seeking taxes that she owed on her inheritance but that she was "working on things" with her therapist. (Tr. 392) Dr. Hudefi identified her risk factors as relational issues with her ex-husband and the pending lawsuit. (Tr. 392) Dr. Hudefi further noted that Plaintiff was showing more assertiveness with regards to taking responsibility and control over her current

relational situation. (Tr. 392)

On July 13, 2009, Plaintiff presented with an expressive, dramatic affect, however, Dr. Hudefi noted that she had recently lost her dog. (Tr. 393) Plaintiff reported that she was dating and was working in therapy to be more assertive. (Tr. 393) Depression was noted, but was controlled, and anxiety was reported, but no symptoms were observed. (Tr. 393) On August 20, 2009, Plaintiff stated that her therapist advised her she was sabotaging her own happiness, and Plaintiff stated that she does enjoy drama. (Tr. 394) Plaintiff reported that her anxiety and depression were controlled, and that she was retaining an attorney to assist her in the inheritance lawsuit. (Tr. 394) Plaintiff further reported that she was sleeping and eating well and that the stress was directly related to the lawsuit. (Tr. 394) On September 17, 2009, Plaintiff reported some anxiety over the litigation and anger about how her attorney was handling the case. (Tr. 395) Plaintiff also reported that she was currently getting along with her ex-husband. (Tr. 395)

On October 14, 2009, Plaintiff again reported anxiety over the litigation. (Tr. 396) When she returned on November 16, 2009, Dr. Hudefi noted that her depression, sleep and anxiety were controlled. (Tr. 389) On March 3, 2010, Plaintiff reported that her sleep had improved and that her anxiety and depression were overall controlled. (Tr. 397) On July 12, 2010, Plaintiff reported only mild anxiety and depression. (Tr. 398) On November 16, 2010, Plaintiff was pleasant and cooperative reporting some anxiety but otherwise doing well. (Tr. 399) Further, a review of the records from her counseling sessions with Nick Keeter show continued progress towards her treatment goals. (Tr. 400-13)

Plaintiff contends that Dr. Hudefi's mental assessment of Plaintiff shows that her anxiety and abnormal personality traits are problematic without citing any specific reason. (Doc. 9, p. 11) Dr.

6

Hudefi's assessment was completed on November 12, 2012. (Tr. 947-50) Dr. Hudefi checked moderate to marked limitations in every area of mental activity, however, he did not complete the narrative section of the functional capacity assessment, and these findings are inconsistent with the therapist's and Dr. Hudefi's progress notes as detailed above, as well as her function reports. The ALJ found Plaintiff had mild difficulties in social functioning, as she testified that she goes to a cancer support group and has friends. (Tr. 68) Also, in her function report Plaintiff wrote that she goes to church and has no problems getting along with family, friends, neighbors and others, but that pain limits her social activities. (Tr. 161-63) The limitations in Dr. Hudefi's November 2012 assessment were not supported by the objective medical evidence and contrasted with other evidence, therefore, the ALJ properly discounted this opinion. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ may credit another medical evaluation over that of treating physician when other assessement is supported by better medical evidence, or where treating physician renders inconsistent opinions).

    Plaintiff contends that her osteoarthritis and fibromyalgia cause pain in her hands, joint tenderness in her fingers, and problems with her grip that have persisted for several years and caused her to see Dr. James Deneke, a rheumatologist. (Doc. 9, p. 11) X-rays of her hands on October 20, 2010, showed no significant findings. (Tr. 421) On October 27, 2008, Dr. Deneke noted that her fibromyalgia symptoms were improved with Cymbalta and her hands had improved with injections. (Tr. 628) Dr. Deneke advised her to continue with range of motion exercises for her hands. (Tr. 628) Dr. Deneke's examination of Plaintiff showed good range of motion without pain in her neck, shoulders, elbows, wrists, hips, knees, ankles and back. (Tr. 641-42) Plaintiff complained of tenderness in her hands, but Dr. Deneke noted no real swelling and her fingertips were readily

7

approximated to the palms. (Tr. 641) Dr. Deneke reported he saw no signs of inflammatory arthritis. (Tr. 642) These findings are consistent with Plaintiff's statements in her function report that she has minimal problems with her personal care, although she dresses slowly and cannot tie her shoes. (Tr. 159) Plaintiff prepares her own meals daily, waters her outdoor plants, and does her laundry. (Tr. 160) Plaintiff stated she drives, shops for groceries, and can lift one to two pounds. (Tr. 163) In a third party function report, her friend, Diane Arnold, stated Plaintiff was able to manage her household but had limitations in yardwork and vacuuming. (Tr. 193)

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (Plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities). Considering the evidence as a whole, the Court finds the ALJ's step two determination is supported by substantial evidence and should be affirmed.

The Court also finds it significant that Plaintiff did not allege cluster B personality traits, osteoarthritis, or fibromyalgia in her application for disability benefits. (Tr. 169) *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (the fact that claimant did not allege disabling condition in his application is significant). Therefore, the ALJ was not required to evaluate these impairments or find them severe. *See Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (holding "the administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability") (quoting *Brockman v. Sullivan*, 987 F.2d

1344, 1348 (8th Cir. 1993)). In any event, the ALJ considered all of these alleged impairments and their related limitations in determining Plaintiff's RFC. The ALJ considered Plaintiff's complaints of fear, focus, memory problems, numbness in her hands, pain, and fatigue. (Tr. 15) Finally, once an ALJ finds a claimant has a "severe" impairment at step two, the ALJ must then consider all impairments, including those that are less than "severe," in determining a claimant's RFC. *See* 20 C.F.R. § 404.1545(e). Therefore, the Court finds no error in the ALJ's step two determination.

### B.  No Error in RFC Determination

The ALJ determined Plaintiff has the RFC to perform light work except that she can use her hands for frequent, but not repetitive, reaching, handling and fingering. (Tr. 14) The ALJ further found Plaintiff can do work with simple tasks and simple instructions that involves only incidental contact with the public. (Tr. 14) Plaintiff contends the ALJ failed to properly take into account the limitations caused by her mental impairments and by affording Dr. Hudefi's assessment of her work-related restrictions little weight. (Doc. 9, pp. 12-14) Plaintiff further contends the ALJ's RFC finding did not take into account medical evidence that would restrict her from standing, walking and using her hands. (Doc. 9, p. 14) Plaintiff also asserts the ALJ should have ordered a physical consultative examination and failed to conduct an appropriate credibility analysis of Plaintiff's subjective complaints. (Doc. 9, pp. 14-16)

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*,

9

578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints, including: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians." *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As stated in the previous section, the ALJ properly considered the evidence in connection with Plaintiff's alleged impairments of anxiety, cluster B personality traits, fibromyalgia and osteoarthritis. The ALJ weighed the medical evidence along with Plaintiff's subjective complaints

10

and information provided by her friend, Diane Arnold, and found Plaintiff would be limited by repetitive reaching, handling and fingering, and she would require simple tasks with simple instructions and only incidental contact with the public.

Plaintiff contends she has problems with significant degenerative disc disease and accompanying radicular symptoms that would preclude her from the hours of standing and walking that light work requires. (Doc. 9, p. 14) Plaintiff, however, does not cite to any specific evidence to support this contention.

On April 18, 2006, Plaintiff presented to Dr. David Rovetti in Reno, Nevada, for an Impairment Rating after an accident at her employment. (Tr. 242) Plaintiff reported low back pain that radiated into her left thigh, but that her ankle was doing better. (Tr. 242) Dr. Rovetti observed no swelling of the lumbar spine and Plaintiff had a normal gait. (Tr. 245) On May 7, 2010, Plaintiff's physical therapist noted after seven (7) physical therapy sessions she was doing well with only mild tenderness in her lower back and negative straight leg raises and had started doing Pilates at home in addition to the physical therapy. (Tr. 833)

On February 16, 2011, Plaintiff was examined by Dr. Daniel Mackey. (Tr. 820-21) He noted Plaintiff had no tenderness to palpation of the spine. (Tr. 820) On October 16, 2011, an x-ray of the lumbar spine showed only mild degenerative facet arthropathy of the lower lumbar spine and no fracture, dislocation or bony abnormality of the right ankle with a well maintained ankle joint. (Tr. 420) A CT scan on June 20, 2012, showed a small disc bulge or protrusion at the L3-4 level with mild facet hypertrophy and mild canal stenosis and laminectomy changes at the L4-5 level with facet hypertrophy and mild anterolisthesis of the L4 vertebra on the L5 vertebra. (Tr. 822) Plaintiff was treated conservatively with pain medication, and no work limitations were suggested. (Tr. 932,951-

55, 958) Further, Plaintiff testified that she walked two miles every other day. (Tr. 69) Plaintiff has the burden of establishing her RFC. *See Vossen, supra*, at 1016. The Court finds that substantial evidence supports the ALJ's credibility determination, as well as his RFC assessment.

Finally, Plaintiff contends the ALJ should have ordered a physical consultative examination. While an ALJ does have a duty to fairly and fully develop the record, this duty is not never-ending, and an ALJ is not required to disprove every possible impairment. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (citation omitted). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Id*. (citation omitted). There is no bright line test for determining whether the ALJ failed to adequately develop the record, and this determination is made on a case by case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994).

The need for medical evidence does not necessarily require the Commissioner to produce additional evidence not already within the record. An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). Providing specific medical evidence to support her disability claim is, of course, the Plaintiff's responsibility, and that burden of proof remains on her at all times to prove up her disability and present the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991); 20 C.F.R. § 416.912(a) and (c).

Even if Plaintiff could show the ALJ failed to fully develop the record, which she failed to do, Plaintiff did not show she was prejudiced or treated unfairly by the ALJ's alleged failure to develop the record. Therefore, remand would not be proper. *Onstad v. Shalala*, 999 F.2d 1232, 1234

(8th Cir. 1993). Accordingly, the ALJ did not violate his duty to develop the record by failing to elicit more testimony from Plaintiff or to order medical and psychiatric evaluations based upon the medical evidence and the testimony presented at the hearing. Substantial evidence supports the ALJ's finding these other alleged impairments were either not medically determinable or non-severe.

### C. No Error in Step Five Analysis

Plaintiff contends the ALJ erred by failing to include an accurate description of Plaintiff's limitations in the hypothetical presented to the VE thereby failing to satisfy his burden that there are other jobs that Plaintiff can perform. (Doc. 9, pp. 16-17) "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation omitted). Hypothetical questions should "set forth impairments supported by substantial evidence [on] the record and accepted as true." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quotation omitted), and "capture the 'concrete consequences' of those impairments." *Lacroix*, 465 F.3d at 889 (*quoting Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir. 1996).

"The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id*. Based on our previous conclusion that the ALJ's RFC findings are supported by substantial evidence, we hold that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also Lacroix*, 465 F.3d at 889.

## V. Conclusion

For the foregoing reasons, the ALJ committed no reversible error and his decision is supported by substantial evidence on the record as a whole. The ALJ's decision is accordingly **AFFIRMED**. Plaintiff's case is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED** this 23rd day of March, 2016.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE